IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NICOLE DAVIS and JESSE ZAMORA individually and on behalf of all others similarly situated | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO: 19-CV-4003 |
| | | JUDGE ASPEN |
| *Plaintiffs,* v. | | |
| WENDY'S INTERNATIONAL, LLC | | MAG. JUDGE FUENTES |
| *Defendant.* | | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Nicole Davis offers the following brief in opposition to Defendant Wendy's motion to dismiss. For the following reasons, Wendy's motion should be denied.

1. **Plaintiff Zamora's claims are now moot.**

Defendant makes various arguments relative to Plaintiff Zamora's claims. These arguments are now moot because Zamora has voluntarily dismissed his claims. R. Doc. 16. The only remaining cause of action is now a Title III claim under the Americans with Disabilities Act ("ADA") made on behalf of Plaintiff Davis and a putative class.

2. **The elements of Davis' claim.**

To allege a claim under Title III of the ADA a plaintiff must show: (1) they are disabled; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant on the basis of their disability. *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). The term "discrimination" within the meaning of the Act is defined in two

1

overlapping categories of conduct: "general prohibitions" and "specific prohibitions." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 116 (3d Cir. 1998).

The general prohibitions, found at 42 U.S.C. § 12182(b)(1)(A)(i)-(iii), prohibit three types of conduct: (1) denying the disabled an opportunity to participate in a good or service; (2) providing the disabled with an unequal opportunity to participate in a good or service; or (3) providing a good or service to the disabled that is separate or different from that provided to non-disabled people.

The specific prohibitions, found at 42 U.S.C. § 12182(b)(2)(A)(i)-(iv), prohibit an additional four types of conduct: (1) imposing eligibility criteria that tends to screen out disabled individuals; (2) failing to make reasonable modifications in policies and procedures that would afford the disabled access; (3) failing to provide auxiliary aides and services that would afford the disabled access; (4) failing to remove architectural barriers that prevent the disabled from accessing a public accommodation.

Together, the general and specific prohibitions provide a panoply of bases for the disabled to seek equal opportunity and access in our society. This is what Congress intended. *See e.g.,* 42 U.S.C. § 12101(a)(7) ("the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals"). The specific prohibitions are meant to supplement the general prohibitions, and a cause of action can be supported by one or both categories of conduct. *Ass'n for Disabled Amer. v. Integra Resort Man.*, 385 F.Supp.2d 1272, 1279 (M.D. Fla., 2005); *Reichert v. Elizabethtown Coll.*, No. 10-2248, slip op. at 16-17 (E.D. Pa. Apr. 10, 2012); *Kalani v. Starbucks Corp.*, 117 F. Supp. 3d 1078, 1087 (N.D. Cal. 2015).

Davis makes allegations under both the specific and general prohibitions. First, she alleges that Wendy's violates the general prohibitions by totally denying her an equal opportunity (or *any* opportunity) to purchase Wendy's food during late-night operating times when only the drive-thru is open (Compl. ¶¶ 72-73). Second, Davis alleges that McDonald's violates the specific prohibitions by not modifying the policies at is restaurants, or providing auxiliary services, that would enable Davis to access those restaurants. (Compl. ¶ 74).

In response to these allegations Wendy's asks the Court to dismiss Davis' claim pursuant to FRCP 12. It generally argues that: (i) this Court cannot preside over a nationwide class action pursuant to *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) ("*Bristol-Myers*"); (ii) Davis' has no standing; (iii) Davis' does not establish Wendy's discriminated against her "on the basis of" her disability; and (iv) Davis' does not sufficiently allege Wendy's is an "operator" or "lessor" of the public accommodation at issue in this case. Davis addresses each of Wendy's arguments below.

**3. The Court should not strike Plaintiff Davis' nationwide class claims.**

Courts disagree whether *Bristol-Myers* applies to nationwide class actions filed in federal court. There are two schools of thought. Some hold that *Bristol-Myers* "outlaws" nationwide class actions, on the basis of due process concerns, except where they are filed in a defendant's backyard. *DeBernardis v. NBTY, Inc.*, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018). The opposing view is that the due process issues raised by *Bristol-Myers* do not apply in FRCP 23 class actions. *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 819 (N.D. Ill. 2018) (collecting cases). Wendy's argues for the former interpretation, asking this Court to strike Davis' nationwide class claims. Davis argues the for the latter position—that *Bristol-Myers* should not be applied to this case because it is distinguishable in two important ways.

3

First, while it is true that due process was a problem in *Bristol-Myers*, Wendy's does not explain why it is a problem here. This is a putative nationwide class action under federal law brought in federal court. By contrast, and as other courts have already observed, *Bristol-Myers* involved plaintiffs who were not from California attempting to leverage California state law on a defendant who was also not from California. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 09-2047, 2017 WL 5971622, at *16, 20 (E.D. La. Nov. 30, 2017); *In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2019 WL 2570616, at *18 (S.D. Fla. June 21, 2019). This obvious forum shopping raised due process concerns because of the "coercive power of a State [with] little legitimate interest in the claims in question." *Bristol-Myers* at 1780.

Here, Davis' lawsuit invokes federal law in a federal forum. Wendy's does not explain how a nationwide, federal-question class action in Illinois federal court violates its due process rights while a nationwide, federal-question class action in Ohio federal court does not. Nor can Wendy's seriously argue that its rights are better protected by lawsuits in all 50 states, each presenting the same basic legal question as Davis does here *i.e.* whether Wendy's drive-thru-only restaurants violate the ADA. Especially in a FRCP 23(b)(2) case like this one—where class members are not entitled to damages, but only injunctive relief—due process is best ensured by consolidating the issue in one forum. Rule 23 was designed to create efficiencies, not undo them. *In re Chinese-Manufactured Drywall* at *19; *Sanchez v. Launch Tech. Workforce Sols.*, LLC, 297 F. Supp. 3d 1360, 1366 (N.D. Ga. 2018) ("Thus, in contrast to a mass action like *Bristol–Myers*, which may—and likely would—present significant variations in the plaintiffs' claims, the requirements of Rule 23 class certification ensure that the defendant is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense. Because of the unitary nature of that class claim, the Court perceives no unfairness in hailing the defendant into court to answer to it in a

4

forum that has specific jurisdiction over the defendant based on the representative's claim."). In sum, this Court should "do what many courts before it have done—approve a nationwide class and proceed with the action." *In re Chinese-Manufactured Drywall* at *14.

The second difference between *Bristol-Myers* and this case is that *Bristol-Myers* was a mass action, not a class action. Based on this distinction a "plethora" of federal courts have "soundly rejected" that *Bristol-Myers* bars nationwide class actions—because the relevant jurisdictional analysis turns only on the claims of the named plaintiff, not absent class members. *In re Takata* at *18. (collecting cases); *Ambriz v. Coca Cola Co.*, No. 13-CV-03539-JST, 2014 WL 296159, at *6 (N.D. Cal. Jan. 27, 2014) ("Simply put, it is the named plaintiff's claim that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification.") (quotations omitted). Here, Davis has alleged enough to create personal jurisdiction over Wendy's in relation to her individual claim,[1] and that should be enough for her nationwide class claims to survive the pleading stage.

The competing view, advocated by Wendy's and some courts, is that *Bristol-Myers* tacitly eviscerated the nationwide class action device. Yet it seems highly improbable that the Supreme Court could have intended such a drastic result and not told us explicitly. As Judge Feinerman of this District recently observed:

> "Indeed, *Bristol-Myers* characterized its holding as a "straightforward application...of settled principles of personal jurisdiction." That characterization is hard to square with the extraordinary sea change in class action practice that [defendant's] reading of *Bristol-Myers* would prompt. Had the Supreme Court truly sought to bar certification of nationwide or multistate class actions on due process grounds in all but the one or two States where the defendant is subject to general jurisdiction, it implausible that it would have done so obliquely, in a mass action, and with the caveat that it was "leaving open the question whether the Fifth

---

[1] Defendant's motion does not dispute that Davis has alleged sufficient facts to create personal jurisdiction over Wendy's relative to her individual claim.

5

>Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" as the Fourteenth Amendment does "on the exercise of specific jurisdiction by a State."

*Id*. (citations omitted). Judge Feinerman's reasoning is sound. "Regardless of the temptation by defendants across the country to apply the rationale of *Bristol-Myers* to a class action in federal court, its applicability to such cases was expressly left open by the Supreme Court[.]" *Broomfield v. Craft Brew All., Inc.*, 2017 WL 3838453, at *15.

For the foregoing reasons, Wendy's motion to dismiss Davis' nationwide ADA class claims should be denied.

### 4. Plaintiff Davis does not lack standing to bring her ADA claim.

ADA plaintiffs must establish Article III standing. This includes pleading an "injury in fact" which is both (1) "concrete and particularized" and (2) "actual and imminent." *Scherr v. Marriott Intern., Inc.*, 703 F. 3d 1069, 1074 (7th Cir. 2013). The violation of a statute creates a "concrete and particularized" injury when it presents an "appreciable risk of harm" to the underlying concrete interest that Congress sought to protect by enacting the statute. *Groshek v. Time Warner Cable, Inc.*, 865 F. 3d 884, 887 (7th Cir. 2017). Under the ADA an injury is "actual or imminent" when it is reasonable to infer from the plaintiff's complaint that they intend to return to the allegedly discriminatory public accommodation in the future. *Scherr* at 1074.

With these standards in mind Davis pleads the following facts. She visits the Wendy's in her neighborhood approximately once every two months. Compl. ¶ 41. It is in close proximity to other commercial establishments that she likes to visit. Compl. ¶ 42. She sometimes walks to the Wendy's and it is also on a bus line that she frequently uses. Compl. ¶¶ 37, 43, 44. Davis experienced a specific instance of being unable to access the Wendy's near her home during drive-thru-only hours in February of 2019. Compl. ¶¶ 37-40. Davis desires to eat Wendy's food during

late-night times but avoids going to the restaurant because she is knows it is drive-thru only. Compl. ¶¶ 36, 46.

Contrary to Wendy's Rule 12(b)(1) arguments, the above allegations establish standing. A useful comparison is the *Scherr* case. In *Scherr*, an Illinois plaintiff alleged that a Marriot hotel located in Kansas had a non-ADA-compliant door. *Scherr* at 1072. She alleged that her extended family lived in Kansas, and that she planned to attend a wedding there in the future. *Id*. The *Scherr* plaintiff further alleged that she would stay at the Marriot with the non-complaint door, but for her knowledge that it was still being used by the hotel. *Id.* On these facts the 7th Circuit found standing under Title III of the ADA. *Id*. 1074-75. Similarly, here, Davis pleads that she (1) is aware of her local Wendy's policy of only serving food through the drive-thru: (2) she regularly visits that Wendy's; (3) she would like to enjoy Wendy's food when only the drive-thru is open; and (4) she sometimes avoids going there because she knows the restaurant is inaccessible to her.

Wendy's argues that Davis must allege she was denied access more than "only" one time. Def.'s Br. at 10. Yet Wendy's provides no compelling justification (nor any caselaw) for requiring such an allegation. If Davis is aware of the drive-thru-only policy at her local Wendy's, and she has already unsuccessfully tried accessing the restaurant, why force her to go back again? And if Wendy's would force her to go back, what is the magic number of futile attempts which Wendy's requires? Other courts have held that once is enough. *See e.g., Access 4 All, Inc. v. Chicago Grande, Inc.*, No. 06 C 5250, 2007 WL 1438167, at *6 (N.D. Ill. May 10, 2007) ("Once a plaintiff with a disability has concluded that the facility is not accessible, she need not struggle with the inaccessibility to establish injury.").

Wendy's also argues that Davis fails to allege she "independently tried to use the drive-thru." Def.'s Br. at 10. Wendy's does not elaborate on this argument, though it suggests that Davis

7

could allege she "was not in a car when [she] went to the restaurant." Because Davis alleges that she is blind and cannot legally operate a motor vehicle, it goes without saying that if Davis was in a car (and she was not) she would not have been accessing the restaurant "independently." If Wendy's means to argue that Davis does not allege she "independently" tried to access the drive-thru while on foot, well, that is an ill-conceived pleading requirement. "[The plaintiff] need not engage in the futile and potentially dangerous gesture of attempting to obtain food, on foot, from the drive-thru [in order to establish standing]." *Morey v. McDonald's* No. 18-1137, slip op. at 5 (N.D. Ill. Nov. 26, 2018).

Wendy's claims that Davis fails to allege threat of future injury because she does not satisfy the four factors found in *Faircloth v. McDonald's Corp.*, No. 18-1831, 2018 WL 5921230 (N.D. Ill. 2018). Those factors are: (1) the history of a plaintiff's patronage at the inaccessible location; (2) the proximity of the location to the plaintiff's residence; (3) the definiteness of the plaintiff's plans to return to the location; and (4) the plaintiff's frequency of travel near the location. *Id*. at *3 (quoting *Access 4 All* at *6). As shown above, Davis' lawsuit makes allegations directly on point with all four of these factors. Additionally, unlike the plaintiff in *Faircloth*, Davis has actually suffered a past instance of being unable to access the Wendy's near her home.[2]

Though Wendy's insists that Davis cannot meet the *Faircloth* factors, it provides little explanation why. The only analysis it offers is relative to the third factor, which it claims Davis "obviously" cannot satisfy because she alleges that she "sometimes" avoids eating at Wendy's

---

[2] The *Faircloth* court found the four factors of increased significance to the future injury question because the *Faircloth* plaintiff did not allege he had actually encountered the inaccessible restaurant previously. *Cf. Morey* slip op. at pg. 5, n. 4 ("Unlike the plaintiff in *Faircloth*, [the Morey plaintiff] went to the restaurant, found the doors locked, and knew she would not be served otherwise..."). Wendy's confusingly claims that Davis has never tried accessing its restaurant in the past. Def's. Br. at 9 (As here, however, the *Faircloth* plaintiff did not allege he actually tried to access any restaurant during late-night hours…"). This argument is plainly contrary to the facts alleged in Davis' lawsuit. Compl. ¶¶ 37-40.

during late-night hours. Wendy's characterizes this allegation as an example of "some day intent" that cannot confer standing. However Wendy's reading of Davis' complaint is too limited. Davis *also* alleges that she enjoys eating at Wendy's once every two months, that she walks to the one near her home, and she would like to eat there during its drive-thru only operating times. This is not a hypothetical threat of injury; Davis is not alleging that she might one day travel to Sri Lanka in hopes of happening across endangered leopards. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). She is talking about getting food at the Wendy's in her neighborhood.

Davis' complaint sufficiently pleads allegations that confer standing.

### 5. 7th Circuit caselaw does not foreclose Davis' claim.

Wendy's next argues that Davis' claim is not actionable under recent 7th Circuit caselaw. It cites *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587 (7th Cir. 2018) for the proposition that Plaintiff cannot establish her disability is the "but for" cause of Wendy's discrimination. However, a close reading of that case indicates that *A.H.* does not support Wendy's argument.

In *A.H.*, the disabled plaintiff was a standout athlete at his local high school, including track. *Id.* at 590. The plaintiff was not fast enough, however, to qualify for the Illinois state championship meet ("State"), a distinction earned by only 10% of all Illinois student track athletes. *Id.* at 591. In order to qualify for State, a student athlete had to run a qualifying time at the state sectional track meet. *Id.* Notably, the plaintiff was given the opportunity to run at the state sectional track meet, he just failed to run a qualifying time. *Id.* at 593. The plaintiff claimed that by failing to create different qualifying times for parambulatory runners, the body administering the State championship violated the ADA by denying him a "meaningful opportunity" to qualify. *Id.* at 591-3.

9

The 7th Circuit disagreed. First, it noted that the plaintiff already had the opportunity to qualify for State, he just failed to do so. *Id.* at 593. It then focused its inquiry on a but-for causation test, asking whether the plaintiff could have accessed the benefit he sought were he not disabled. *Id.* at 593-594. The Court answered that question in the negative, stating:

> "[The] qualifying time standards are designed to make the individual races extremely competitive, purposely excluding a great-majority of runners from reaching State… [t]he odds are overwhelming that runners like A.H. would not meet the qualifying times even if they were not disabled. While A.H. is a gifted runner given his disability, A.H. has not established that, were he not disabled, he would be among the 10% of track and field athletes that qualify for State each year."[3]

There are two big differences between *A.H.* and the instant case. One is that Davis, unlike the plaintiff in *A.H.*, *does not have the opportunity to qualify* for the benefit she seeks. The *A.H.* plaintiff had the opportunity to earn a qualifying time for State; but Davis is categorically unable to meet the requirement that would allow her an independent opportunity to access Wendy's—the ability to operate a motor vehicle. Unlike the plaintiff in *A.H.*, Davis is not asking for Wendy's to make it easier for her to independently access their services, she is asking for the chance to do so *in the first place*. *Kalani* at 1088 ("Defendant cannot contest that it offers non-disabled patrons the *choice* of whether to capitalize on the opportunity [to participate]…") (emphasis in original).

The second difference is the factual context of the two cases. The plaintiff in *A.H.* was trying to lower the qualifying times for an elite state championship in high school athletics. Davis is trying to order food from a Wendy's restaurant. It might have been difficult (or perhaps

---

[3] *Id.* at 594. The *A.H.* appeal was from a summary judgment, and presumably the plaintiff could have adduced evidence to the trial court creating a disputed fact as to whether he would have qualified were he not disabled. That is what the plaintiff did in one case relied on by the *A.H.* Court, *Washington v. Indiana High School Athletic Ass'n*, 181 F. 3d 840 (7th Cir. 1999). In *Washington*, the court upheld the district court's finding that but for a student's learning disability, he would have not have dropped out of school. *Id.* at 849. This conclusion was based on the testimony of a school psychologist, who opined that learning disabilities like the plaintiffs' contributed to higher chances of dropping out of school. *Id.*

impossible) for the *A.H.* plaintiff to establish that were it not for his disability, he would have been one of the top runners in the state. But it is fair to assume that but for her disability, Davis would be able to drive a motor vehicle—and thus utilize Wendy's drive-thru. If we cannot make that assumption, then ADA pleading standards would turn absurd: Davis would have to allege that she has studied for the drivers' license test, that she owns a car (or has money to buy one), that she obtained car insurance, that the car is in working operation, has gas in the tank, and so on. Applying the *A.H.* decision at the pleading stage requires courts to make reasonable assumptions. That Davis could drive a motor vehicle but for her visual impairment seems like a reasonable one.[4]

Another court in this District made that same assumption on nearly identical facts. In *Morey v. McDonald's*, the defendant made the same argument that Wendy's does here: that *A.H.* means a blind person trying to access a drive-thru only restaurant cannot state a claim under the ADA because they are merely being treated the same as any other pedestrian. *Morey* slip op. at 7-8. The *Morey* court disagreed. "More importantly, [defendant] misconstrues the appropriate causation test: but for her disability, would [plaintiff] be able to access the drive-thru like any other sighted person—in other words, someone who can drive, not someone on foot… [plaintiff] would likely be able to access [defendant's] late-night menu via automobile but-for her visual impairment." *Id*. at 8 and n. 5.

In sum, *A.H.* is factually distinguishable and does not apply to Davis' claim.

### 6. Davis sufficiently alleges that Wendy's is an "operator" under the ADA.

"Though the Seventh Circuit has not addressed" the exact issue of when a franchisor is an operator under the ADA, "several courts of appeal have concluded that" the "critical factor in

---

[4] When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

determining the liability of a franchisor under Title III of the ADA…is whether the franchisor specifically controls the modification of the franchises to improve their accessibility to the disabled." *A.C. v. Taurus Flavors, Inc*., 2017 WL 497765, at *2 (N.D. Ill. Feb. 7, 2017) (citations and quotations omitted). "[T]he relevant standard is whether [an entity has] the power to facilitate any necessary accommodation…the operator requirement *retains accountability for those in a position to ensure nondiscrimination.*" *Lentini v. California Center for the Arts*, 370 F.3d 837, 849 (9th Cir. 2004) (emphasis in original) (citations and quotations omitted).

Davis' lawsuit alleges a raft of facts establishing that Wendy's "specifically controls the modification" of its franchisees to change their practices to accommodate Davis. She alleges that Wendy's "promulgates a system of rules, directives, and/or commands" known as the "Wendy's System," that it "implements, maintains, and enforces" on all Wendy's branded restaurants, and that franchisees must agree, as a condition in their agreements with Wendy's, to implement any new services or directives dictated by Wendy's. ¶¶ 15-21. Thus, if Wendy's desires to unilaterally require franchisees to modify their services or policies at a restaurant, the franchisees are required to comply.

Wendy's attaches an unauthenticated franchise agreement, (R. Doc. 12-1), allegedly confected in connection with the Wendy's restaurant at issue in this case. The Court should not consider this document. While Davis agrees that the franchise agreement is relevant to her claim, it does not tell the whole story. Davis alleges a *system* of oversight and control by Wendy's, only a part of which is the franchise agreement. This is clear from the agreement itself—Section 1.1 obligates franchisees "to operate the Wendy's Old Fashioned Hamburgers restaurant…in accordance with this Agreement and the standards and procedures set forth in Franchisor's Operating Manual…" R. Doc. 12-1, pg. 6. Elsewhere the agreement explains that a franchisee

12

"shall conduct its business in accordance with the [Operating] Manual." R. Doc. 12-1, pg. 16. Furthermore, the franchise agreement gives Wendy's the unilateral authority to revise the Operating Manual, and the franchisee must "comply with each new or changed standard." R. Doc. 12-1, pg. 12. Thus, at a minimum, the Court should consider the contents of the Operating Manual before ruling on Wendy's arguments regarding its status as "operator" under the ADA. Because Wendy's does not attach the Operating Manual to its motion, the Court should not entertain Wendy's request that it consider the franchise agreement in a vacuum.

That said, Wendy's franchise agreement does not undermine Davis' claims, it confirms them. Section 6.6 gives Wendy's the power to dictate what hours the restaurant is open. Section 6.10 gives Wendy's the power to require structural changes to the restaurant. Section 6.11 requires franchisees to "operate the Restaurant in strict conformity with such methods, standards, and specifications as [Wendy's] may time to time prescribe in the [Operating Manual] or otherwise in writing." Section 6.17 requires franchisees to "implement and adhere to all changes, additions, and refinements in the [Wendy's] System, as may be prescribed by [Wendy's] from time to time, including, without limitation, the providing of new or different…services[.]" According to Section 14 of the franchise agreement, if a franchisee "fails to implement or adhere to new or changed System requirements, fails to implement and offer new…services as may be specified by [Wendy's], or fails to undertake such actions as are necessary to implement such new or changed System requirements," then Wendy's has the option of terminating the rights of the franchisee.

Under the franchise provisions cited above, it is clearly within the dominion of Wendy's to require its franchisees to keep their lobbies open to people with disabilities like Davis. Just as Wendy's could, for example, require their franchisees take Davis' order over the telephone and deliver her order through the front door when she arrives at the restaurant. Wendy's argues that

13

because their franchise agreement does not include any clause relating to the accessibility issue in this case, that this means they do not "control the conduct at issue." Def's Br. at 14. This argument misreads the applicable law. The question is not whether there is a specific provision relating to Davis' accessibility issue, but whether the franchisor retains the specific control *to modify* the franchisees practices. The above provisions indicate that they most certainly do.

Wendy's cites to *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir. 1995), but that case involved a different dispute over a significantly different franchise agreement. In *Neff*, the plaintiff sought to have a franchised restaurant modified to include wheelchair access. *Id.* at 1064. The Fifth Circuit determined that there was only a single paragraph in the franchise agreement which related "to modifications of the structure of the [restaurant]" and that this paragraph only provided the franchisor with the right to "disapprove any proposed modifications to the [restaurant] building and equipment." *Id.* at 1068. The Fifth Circuit further found that this amounted to a "limited form of control over structural modifications," but not enough to make the defendant an "operator" under the ADA. *Id*.

Based on the documents attached to its motion to dismiss, it is clear that Wendy's franchise documents are considerably more comprehensive and controlling than the one involved in *Neff*. In *Neff*, the Fifth Circuit found that there was only one provision in the franchise agreement that would have governed the franchisor's ability to compel plaintiff's requested alteration to the restaurant, and that this provision provided the franchisor with limited enforcement rights. By contrast, Wendy's franchise agreement apparently gives Wendy's the authority to dictate virtually any new service it wishes. As argued above, that would include leaving the lobby of the restaurant open later or requiring franchisees to take Davis' order over the telephone and deliver her order out the front door when she arrives.

14

Davis sufficiently states a claim with regard to Wendy's operator liability under Title III of the ADA.

**7. Davis sufficiently alleges that Wendy's is an "owner" or "lessor" under the ADA.**

In addition to being liable as an "operator" of its restaurants, Wendy's can also be liable as an "owner" or "lessor" of those restaurants. Wendy's argues that Davis has not alleged it is an "owner" or "lessor." Yet Davis' complaint alleges that "[s]ome Wendy's restaurants are owned and operated entirely by the Defendant, while others are co-owned and/or co-operated by franchisees." Compl. ¶ 14. The plain reading of this allegation is that Wendy's owns some of its restaurants entirely and, in other instances, it shares ownership with a third party. Co-ownership is still ownership under the ADA. *Moore v. Cisneros*, 2012 WL 6523017, at *4 (E.D. Cal. Dec. 13, 2012).

Wendy's tells us via parenthetical that it is not the lessor of the restaurant Davis visited. Def.'s Br. at 13. This matter seems easy enough to resolve with a copy of the lease. Given that Davis *does* allege that Wendy's is at least a co-owner of the restaurant near her home, the Court should deny Wendy's motion and permit the small amount of discovery required to answer the question conclusively.

*Respectfully submitted,*
*/s/ Roberto Costales*
Roberto Luis Costales, Esq.
William H. Beaumont, Esq.
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000
Facsimile: (504) 272-2956
rlc@beaumontcostales.com

*Attorneys for Plaintiffs*

15