**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| NICOLE DAVIS and JESSE ZAMORA individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-CV-04003 |
| v. | ) ) | Hon. Marvin E. Aspen Hon. Mag. Gabriel A. Fuentes |
| WENDY'S INTERNATIONAL, LLC | ) ) | |
| Defendant. | ) | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

I.      **INTRODUCTION**

This is a putative nationwide Rule 23 class action under Title II of the Americans with Disabilities Act. ("ADA"). Plaintiffs, both of whom are visually impaired, challenge an alleged policy of Wendy's International, LLC ("Wendy's") that prevents pedestrians (visually impaired or not) from accessing Wendy's drive-thru after-hours. As Wendy's motion to dismiss explains, however, Plaintiffs' Complaint suffers from numerous defects, some procedural, some jurisdictional, and some legal.  Indeed, in response to Wendy's motion, Plaintiff Zamora voluntarily dismissed his claims, in apparent recognition that this Court lacks personal jurisdiction over them.  [Dkt. 16.]  Thus, what remains is Plaintiff Davis's ADA claim.  But this Court lacks personal jurisdiction over Plaintiff Davis's claim as well, at least to the extent she tries to assert the claim based on conduct outside Illinois (and not emanating from a citizen of Illinois).  As a result, the Court should strike Plaintiff Davis's class definition to the extent it concerns locations/conduct outside the State of Illinois.

And Plaintiff Davis's ADA claim suffers from another jurisdictional flaw.  She fails to allege facts that, if true, establish Article III standing.  Specifically, she does not sufficiently plead past injury, and she fails to plead imminent risk of future injury.

Finally—apart from the jurisdictional defects—Plaintiff Davis fails to plead adequately the elements of her individual ADA claim.  Specifically, she: fails to allege facts that could establish that "but for" her disability she would have been able to access Wendy's drive thru window (something many non-visually impaired persons also cannot do); fails to allege that Wendy's actually owns or leases the location she visited; and fails to allege that Wendy's has sufficient operational control over the conduct she claims is discriminatory.  For these reasons too, this Court must dismiss Plaintiff Davis's ADA claim.

## II.     THE COURT LACKS PERSONAL JURISDICTION OVER CLAIMS BY NON-ILLINOIS RESIDENTS PREMISED ON ALLEGED VIOLATIONS OUTSIDE OF ILLINOIS

An Illinois district court lacks specific or general jurisdiction over the claims that Plaintiff purports to bring on behalf of non-Illinois-resident putative class members premised on alleged violations outside the State of Illinois by a defendant over whom the State lacks general jurisdiction.  [Dkt. 12 at 5-8.]  This is because Due Process concerns require that a defendant must have "certain minimum contacts" with the state in which the court sits "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unempl. Comp. & Plac.*, 326 U.S. 310, 316 (1945).

General personal jurisdiction over Wendy's exists only in the State of Ohio, where it is incorporated, and where its principle place of business is located.  Compl. ¶ 11; *see Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760 (2014).

Further, specific jurisdiction exists only where claims are premised alleged conduct that occurred in the forum State, here Illinois.  *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, __ U.S. __, 137 S. Ct. 1773, 1781 (2017) ("*BMS*") ("there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.").  *See also Mussat v. IQVIA Inc.*, No. 17 C 8841, 2018 WL 5311903, at *3 (N.D. Ill. Oct. 26, 2018) (court does not have specific personal jurisdiction over the claims of non-resident putative class members premised on conduct outside the forum state, even were they seek to aggregate them with in-forum residents); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 861–62 (N.D. Ill. 2018) (same); *DeBernardis v. NBTY, Inc.*, No. 17 C

6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (same); *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, No. 16 C 9281, 2018 WL 3474444, at *2 (N.D. Ill. July 19, 2018) (same); *McDonnell v. Nature's Way Prod., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (same).

Plaintiff Davis offers two arguments against these authorities, and in favor of this Court's exercise of personal jurisdiction over the claims of non-residents premised on alleged conduct occurring outside the State of Illinois.  Each argument fails.

First, Plaintiff argues that specific jurisdiction analysis depends on whether the *cause of action asserted* is based on state or federal law.  [Opp. at 4-5.]  That is contrary to the purpose and meaning of *personal* jurisdiction.  Specific jurisdiction over a defendant does not turn on the source of the law on which the *plaintiff* chooses to sue.  T If that were true, that would mean any defendant (whether an individual or corporation) may be sued in any state court, so long as the claims were based on the court's own state law.  Conversely, Plaintiff's theory would mean that any defendant could be sued on federal claims in every state.  Plaintiff appears to base this theory on a tortured reading of the Supreme Court's concern in *BMS*  of "submitting to the coercive power of a State that may have little legitimate interest in the claims in question."  *BMS*, 137 S. Ct. at 1780.  The *BMS* Court's concern has nothing to do with whether the claims are based on federal or state law, but rather basic principles of federalism, and the reach of courts to address out of state conduct.  As the Supreme Court has explained:

> [e]ven if the defendant would suffer minimal or no inconvenience from being
>
> forced to litigate before the tribunals of another State; even if the forum State has
>
> a strong interest in applying its law to the controversy; even if the forum State is
>
> the most convenient location for litigation, the Due Process Clause, acting as an

instrument of interstate federalism, may sometimes act to divest the State of its

power to render a valid judgment.

*Id.* Further, Plaintiff Davis points to no language in the *BMS* decision that indicates the outcome

would have been different had the plaintiff there pursued a claim under federal law. The same

Due Process concerns articulated by the Supreme Court are present regardless of the source of

law being applied. As such, courts have routinely extended the principles of *BMS* to actions

where a Plaintiff seeks to bring claims for which the court does not have personal jurisdiction

premised entirely on federal law claims. *See, e.g, Mussat, supra,* 2018 WL 5311903, at *3

(TCPA action); *Promologics,* 2018 WL 3474444, at *2 (same). Plaintiff Davis, and the non-

binding and out-of-district authorities upon which he relies, misconstrue the *BMS* holding and

create a false distinction based on the application of uniform federal law rather than individual

state laws.

Plaintiff Davis next attempts to draw a distinction between *BMS*—a mass action—and

Rule 23 class actions, to argue that the due process principles articulated in *BMS* are somehow

inapplicable here. Though Plaintiff Davis's cited non-binding authorities rely on this distinction,

the better reasoned cases—and in fact the vast majority of district courts that have addressed this

issue—find that this is a distinction without a difference:

> [N]othing in *Bristol-Myers* suggests the general principle it stands for—that due
>
> process requires "a connection between the forum and the specific claims at
>
> issue"—does *not* apply to nonresident claims in a multistate class action brought
>
> in federal court. Moreover, as this Court has recognized, a defendant's due process
>
> rights should remain constant regardless of the suit against him, be it an
>
> individual, mass, or class action.

4

*Leppert v. Champion Petfoods USA Inc.*, No. 18 C 4347, 2019 U.S. Dist. LEXIS 7585, at *12 (N.D. Ill. Jan. 16, 2019). Additional prior holdings from this District Court agree. *See DeBernardis,* 2018 WL 461228, at *2 (applying *BMS* to preclude claims by non-residents of Illinois because the Supreme Court's espoused federalism concerns are equally applicable to class actions even though the court "underst[ood] the argument that there is a distinction between a mass tort action that was present in *Bristol-Myers Squibb* and a nationwide class action"); *McDonnell, supra,* 2017 WL 4864910, at *4 ("A State may not assert specific jurisdiction over a nonresident's claim where the connection to the state is based on the defendant's conduct in relation to a resident plaintiff, and not the nonresident plaintiff"; dismissing claims of prospective nonresident class members whose only connection to the forum state was provided by a resident plaintiff's purchase of the product); *Mussat, supra,* 2018 WL 5311903, at *3 (no specific jurisdiction over the claims of non-resident putative class members premised on conduct outside the forum state); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 861–62 (N.D. Ill. 2018) (same); *Demedicis v. CVS Health Corp.*, 2017 WL 569157 (N.D. Ill. Feb. 13, 2017) (same); *Promologics,* 2018 WL 3474444, at *2 (same); *Kincaid v. Synchrony Financial*, 2016 WL 4245533 (N.D. Ill. Aug. 11, 2016) (same); *Demaria v. Nissan N.A., Inc.*, 2016 WL 374145 (N.D. Ill. Feb. 1, 2016) (same).

Also in agreement are District Courts from around the nation. *See Spratley V. FCA US LLC*, No. 3:17-cv-0062 (MAD/DEP), 2017 U.S. Dist. LEXIS 147492, * 17, 19-20 (N.D.N.Y. Sep. 12, 2017) (refusing to exercise jurisdiction over class claims premised on out-of-state allegations; "[s]imilarly, in this case, the out-of-state plaintiffs have shown no connection between their claims and [the defendant's] contacts with New York. therefore, the court lacks specific jurisdiction over the out-of-state plaintiffs' claims); *LDGP, LLC v. Cynosure, Inc.*, 2018

WL 439122. at *3 (N.D. Ill. Jan. 16, 2018) (limiting class claims to those of resident plaintiffs; "[t]hough the nonresidents' claims are similar to those of resident plaintiffs, the difference that plaintiffs point out is fundamental: the events that lead to the nonresidents' claims took place outside of [the forum]. the number of would-be nonresident plaintiffs has no bearing on whether those plaintiffs' claims arise from or relate to the defendant's activity in the forum. [Quotations from *BMS* omitted] Consequently, this Court does not have personal jurisdiction over defendant with regard to the claims brought against it by the nonresident plaintiffs"); *Matus v. Premium Nutraceuticals, LLC*, 2016 WL 3078745 (C.D. Cal. May 31, 2016) (national class action cannot be sustained absent general jurisdiction over defendant); *In Re Dental Supplies Antitrust Litigation*, 2017 WL 4217115 (S.D.N.Y. Sept. 20, 2017) (same); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 WL 3129147 (E.D. Pa. July 24, 2017) (same); *Famular v. Whirlpool Corp.*, 2017 WL 2470844 (S.D.N.Y. June 7, 2017) (same); *Bauer v. Nortek Global Hvac LLC*, 2016 wl 5724232 (M.D. Tenn. Sept. 30, 2016) (same).

The claims alleged by Plaintiff Davis on behalf of the nationwide class outside of the State of Illinois are not premised on alleged violations in Illinois. As the Supreme Court articulated in *BMS*, the Court lacks specific jurisdiction over such claims. Thus, the Court must strike Plaintiff's class definition to the extent it includes locations outside the State of Illinois.

## III. PLAINTIFF LACKS STANDING TO ASSERT HER ADA CLAIM FOR INJUNCTIVE RELIEF

Defendant's Motion also established that Plaintiff fails to plead Article III standing to pursue a claim for injunctive relief. [Dkt. 12 at 8-10.] To establish standing for prospective injunctive relief, a plaintiff must allege a "real and immediate" threat of future violations of their rights, which requires alleging:

*ACTIVE 45560504v4*

(1) "past injury under the ADA",

(2) facts from which "it is reasonable to infer from [the plaintiff's] complaint that this discriminatory treatment will continue," and

(3) facts showing "it is also reasonable to infer, based on the past frequency of [the plaintiff's] visits and the proximity of [the public accommodation] to [the plaintiff's] home, that [the plaintiff] intends to return to [the public accommodation]."

*Scherr v. Marriott int'l*, Inc., 703 F.3d 1069, 1074 (7th Cir. 2013). Importantly, even were element (1) properly alleged, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564, 112 S. Ct. 2130, 2138 (1992).

Here, Plaintiff Davis fails to even plead a <u>past</u> violation of the ADA – the first element. Assuming *arguendo* that Plaintiff's theory that closing the inside of a restaurant while continuing to serve customers through the drive through is a violation of the ADA (it clearly is not), Plaintiff Davis fails to allege that <u>she experienced</u> such harm by arriving at a Wendy's after the interior of the restaurant was closed and being unable to obtain service. [*See* Mot. at 10.] It is simply not alleged.

In response, Plaintiff Davis points to paragraphs 37-40 of the Complaint as supplying allegations of the past violation of the ADA directed toward her. They state no such thing. They merely state that:

(a) in February 2019, Plaintiff desired to obtain food from the Wendy's on 7 East 111th Street, Chicago, Illinois [Dkt. 1 ¶ 37];

(b) when Plaintiff arrived at the Wendy's, the lobby doors were locked [¶ 38];

7

(c)     Plaintiff was aware that this particular Wendy's location continued to

serve food through its drive thru after closing the interior of the restaurant

[¶ 39]; and

(d)     Plaintiff was unable to "independently access" the Wendy's on that night

[¶ 40].

They do not allege that Plaintiff Davis was denied service from Wendy's during her alleged

February 2019 visit.  In fact, Plaintiff Davis does not even allege that she walked to the Wendy's

that evening, and was not in a car that could use (and/or did use) the drive thru.  As such,

Plaintiff Davis fails to allege that she actually suffered a past injury—even under her faulty

premise for ADA liability.

Second, even if the Court finds Plaintiff Davis's allegations sufficient to state a past

injury (they are not), Plaintiff Davis has failed to factually allege elements (2) and (3), creating a

"real and immediate" threat of future harm.  In this regard, Plaintiff Davis points to the *Scherr*

decision as a reasonable analogue for this case.  But Plaintiff Davis misreads the *Scherr* decision;

although the logic and analysis of *Scherr* are determinative, its application of them and holding

illustrate why Plaintiff's allegations fail.

In *Scherr*, the plaintiff stayed at a hotel in Overland Park, Kansas, and was injured in an

accident in her room that had been represented to her as ADA compliant.  *Scherr v. Marriott*

*int'l*, Inc., 703 at 1072.  In November 2010, the plaintiff then brought a claim under the ADA

because she wished to stay at the same hotel in May 2011 for her cousin's wedding, but would

be unable to do so because the rooms were not ADA compliant.  *Id*.  In finding that the plaintiff

had standing to pursue her ADA claim, the Seventh Circuit stated: "[plaintiff's] discussion of her

cousin's then-upcoming wedding is sufficient to support a plausible inference that [plaintiff]

8

would have liked to return to the hotel but for its continued use of the spring hinges." *Id.* at 1074.

In contrast, here, Plaintiff Davis fails to allege a sufficiently definite intent to return to the Wendy's location during hours when the interior of the restaurant is closed, but drive-thru service is available. Unlike the *Scherr* plaintiff, who noted a specific date and reason why she wanted to stay at the subject hotel location again, Plaintiff Davis's Complaint contains only statements of insufficient "some day intent." *Faircloth v. McDonald's Corp.*, No. 18-1831, 2018 WL 5921230, at *3 (N.D. Ill. 2018). Plaintiff merely alleges that she:

- "has walked the distance between her home and the Wendy's before and reasonably anticipates doing so again." [Compl. ¶ 43.]

- "has felt and continues to feel disappointed and frustrated in connection with her inability to access Wendy's services." [*Id.* ¶ 45.]

- "sometimes avoids going to Wendy's during its late-night hours." [*Id.* ¶ 47.]

As Seventh Circuit authority establishes, such vague and indefinite allegations are insufficient to establish Article III standing to pursue a claim for injunctive relief. For this reason too, Plaintiff Davis's remaining ADA claim must be dismissed.

## IV. EVEN PUTTING ASIDE THESE JURISDICTIONAL DEFICIENCIES, PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE ADA

### A. Plaintiff Davis Fails to Allege that She was Discriminated Against "On the Basis of Disability."

As set forth in Defendant's Motion, Plaintiff Davis's Complaint fails to state a claim for a violation of the ADA because—among other reasons—Plaintiff fails to allege that Defendant discriminated against her "on the basis of disability." [Dkt. 12 at 11-12.] Specifically, the Seventh Circuit has held that Plaintiff must factually allege "that, 'but for' his disability, he would have been able to access the services or benefits desired." *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (emphasis added).

9

In *A.H.*, the Seventh Circuit held that the plaintiff could not demonstrate that his disability was the reason that he was unable to qualify for the State track meet. *See Id.* at 594 ("causation ... depends on whether he would qualify for State if he were *not disabled*. The fact that A.H. does not have a chance to qualify as a disabled runner does not establish that the qualifying standards set by the IHSA are the but-for cause of his failure to qualify for State."). This holding is consistent with the Seventh Circuit's past analyses of the "but for" requirement in the context of the ADA—noting the similarity to the Fair Housing Amendment's Acts "necessity" requirement. *See Wis. Cmty. Servs. v. City of Milwaukee,* 465 F.3d 737, 752 (7th Cir. 2006) ("we have enforced this limitation by asking whether the rule in question, if left unmodified, hurts "handicapped people *by reason of their handicap*, rather than ... by virtue of what they have in common with other people.").

Plaintiff Davis's Complaint does not allege that the benefit she seeks—access to Wendy's restaurants during late night hours—would be available to her but for her disability. Plaintiff Davis contends that the restaurant interiors are closed to *all* customers during the late night and early morning hours at issue, and that that the drive thru is inaccessible to *all* pedestrians— regardless whether they are disabled. Plaintiff Davis, therefore, has not alleged that "but for" her disability, she would be able to access Wendy's restaurants at night.

Plaintiff Davis makes two arguments against the application of *A.H.* to this case. Both fail. First, she argues that the plaintiff in *A.H.* had an opportunity to qualify for the State track championship, while she did not have an opportunity to access a Wendy's restaurant. [Opp. at 10.] This contention, however, is unpersuasive. First, nothing in *A.H.* or any other cited authority implies that the burden to demonstrate "but for" causation is impacted in any way by the independent opportunity to access the service. Plaintiff Davis must factually allege that her

10

disability is the "but for" cause of her inability to access the service at issue. She cannot where all individuals are allegedly treated the same – they can access the drive thru in a motor vehicle. As such, her attempt to distinguish *A.H.* has no bearing on the relevant analysis. Indeed, Plaintiff Davis wholly ignores the litany of non-disabled people unable to access a drive thru independently for the same reason as her—they do not have or cannot operate a vehicle:

- persons too young to obtain a driver's license;

- persons who are unable to afford a vehicle, insurance, registration or other vehicle-related expenses;

- persons who are unable to pass the driver's license examination;

- persons who have had their driver's licenses suspended or revoked;

- persons who cannot obtain car insurance due to a poor vehicle record;

- persons under the influence of drugs or alcohol;

- persons who have chosen to travel to the restaurant using other forms of transportation (e.g. bicycle, skateboard, scooter, train, on foot, etc.).

Each of these "characteristics" would also preclude persons, including Plaintiff Davis, from accessing the drive-thru window. As such, it is obvious that Plaintiff cannot make a "but for" showing.[1]

In addition, Plaintiff Davis offers no allegations that Wendy's bars visually impaired persons from using the drive-thru window at night through other means, such as a passenger in a friend's car, a taxi, or an Uber. [Dkt. 12 at 1 n.1.] Like Plaintiff in *A.H.*, who was able to attempt to qualify—*without any accommodations for his disability*—Plaintiff Davis has various

---

[1] Her claim is akin to accusing a golf course of "discriminating" against the visually impaired because they cannot drive golf carts, or accusing a drive-in movie theater of discriminating against the visually impaired.

means to access Wendy's restaurant during late night hours.

Plaintiff Davis's second argument is to merely point to the difference in the factual scenarios between *A.H.* (elite track and field competition) versus the present matter (ordering food at a restaurant). Plaintiff Davis tries to use this distinction to argue that the Court should essentially apply a lower standard for the "but for" causation test in this case than the one implemented in *A.H.* In furtherance of this argument, Plaintiff Davis asks the Court to make "reasonable assumptions" that she would own and operate a vehicle if she were not visually impaired—despite no allegations to this effect. But even if the law permitted the Court to make "assumptions" from facts not *pled* (an assumption of vehicle ownership), it is not reasonable to do so here, where Plaintiff Davis lives in an urban environment and alleges the existence of ample public transportation options.[2] Moreover, such additional assumptions are contrary to the "but for" analysis, where a court assesses whether a plaintiff—if no longer disabled—would necessarily be able to obtain the benefit sought. When a court performs this analysis, it hypothetically considers whether the benefit would be available if one variable—the disability of the plaintiff—were altered. A court cannot, however, simply presume myriad other facts to reach a conclusion.

In sum, Plaintiff Davis has failed to allege that "but for" her disability, she would be able to access a Wendy's restaurant at night. As such, she fails to state a claim for violation of the ADA, and Defendant's Motion should be granted.

### B. Plaintiff Davis's Complaint Fails to Allege that Wendy's Owned, Leased, or Operated the Restaurant Location at Issue

Defendant's Motion also established that Plaintiff Davis has failed to allege that Wendy's owned, leased, or operated the 7 East 111th Street, Chicago, Illinois, location [Dkt. 12 at 12-15]

---

[2] Plaintiff admits she is a "regular rider" of the "public bus." [Compl. ¶ 44.]

as required under section 12182(a) under which she brings her claim. *See* 42 U.S.C. § 12182(a) (prohibiting discrimination in places of public accommodation by "any person who owns, leases (or leases to), or operates a place of public accommodation"). In fact, Defendant included the subject Franchise Agreement—incorporated by reference into Plaintiff's pleading—which illustrates that Wendy's does not specifically control the hours or manner of access at the 7 East 111th Street, Chicago, Illinois, location.

Plaintiff Davis first argues that the Court should ignore the Franchise Agreement. But an analysis of the allegations in Plaintiff's Complaint demonstrates that Plaintiff Davis does not adequately plead that Wendy's owned, leased or operated the 7 East 111th Street location. Concerning owned or leased, Plaintiff Davis makes no allegations that Wendy's specifically owns or leases the 7 East 111th Street location; she merely alleges that "[s]ome [of the alleged 6,000 Wendy's® brand] restaurants are owned and operated entirely by the Defendant, while others are co-owned and/or co-operated by franchisees." [Compl. ¶ 14 (emphasis added).] Plaintiff Davis's Complaint does not allege 7 East 111th Street location at issue is one of these owned or leased locations (and, notably, it is not).

Similarly deficient are Plaintiff Davis's allegations with respect to operation of the 7 East 111th Street location. In this regard, she offers a threadbare legal conclusion, that: "Wendy's operates all Wendy's-branded restaurants by implementing, maintaining, and enforcing the Wendy's System as to all Wendy's-branded restaurants." [*Id.* ¶ 16.] Obviously, this does not satisfy operative pleading standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (legal conclusions "not entitled to the assumption of truth"; a court must determine whether there are "well-pleaded, non-conclusory factual allegations").

From there, the Complaint includes cryptic additional conclusions, unsupported by

13

factual allegations, that do not address the pertinent inquiry in any event. For example, it adds that "Wendy's promulgates a system of rules, directives, and/or commands that all Wendy's-branded restaurants are required to follow ... known as the 'Wendy's System,'" and that "[t]he Wendy's system is codified and enforced by manuals and franchise agreements" [Compl. ¶¶ 15, 17]. Though Plaintiff Davis claims these cryptic allegations somehow contain "a raft of facts" [Opp. at 12] which taken as true establish that Wendy's specifically controls the conduct that she alleges violates the ADA—namely, the accessibility of Wendy's restaurants during certain hours only by way of the drive thru[3] – her pleading contains none of those "facts." Vague reference to unalleged "rules," "directives," "commands," "manuals" and other documents do not factually allege that Defendant controls the conduct that Plaintiff Davis claims violates the ADA.

Next, Plaintiff Davis argues that if the Court were to consider the Franchise Agreement referenced in her pleading but not attached to it, it "does not tell the whole story," and that it would have to be read in conjunction with an "Operating Manual" nowhere mentioned in her pleading. [Opp. at 12-13.] Thus, not only does Plaintiff's pleading fail to factually allege control, Plaintiff Davis insists she needs discovery to be able to allege a critical element of her claim – that Wendy's controlled the policy at issue. In doing so, Plaintiff Davis seeks to put the cart before the horse. *See Iqbal*, 556 U.S. at 678-79 (a pleading "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Rojas v. Brindersons Constructors*, 567 F. Supp. 2d 1205, 1212 (C.D. Cal 2008) ("it is plaintiffs' duty to investigate and discover the factual basis of their claims before filing a complaint; discovery is not an open range for plaintiffs to ride roughshod in the hope that their claim may find support").

---

[3] See Dkt. 12 at 13-14, *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1069 (5th Cir. 1995) (franchisor does not "operate" a location for the purposes of the ADA unless it specifically controls the conduct that caused the alleged violation).

14

Conceding her allegations are insufficient, and having argued that the Franchise Agreement that she did not attach to her pleading "does not tell the whole story," Plaintiff Davis then does another about face. She argues that the Franchise Agreement (not attached to her pleading) alone lays the factual predicate for her "control" conclusion. [Opp. at 12-15.] Apart from conceding that her *pleading* does not contains the factual allegations to support her "control" conclusion, as was made plain in Defendant's Motion, nothing in the Franchise Agreement demonstrates that Defendant controls whether individuals have late-night access to the restaurant location through means other than the drive-thru window. Although Plaintiff Davis may now believe that the Franchise Agreement when coupled with an unalleged Operating Agreement may provide support for her conclusions, she misses the critical point—*she failed to plead any of these facts*. Plaintiff Davis's new theories and argument offered in her Opposition do not constitute a pleading.

For this reason too, Plaintiff Davis fails to state an ADA claim.

## V.      CONCLUSION

For the reasons outlined in Defendant's Motion to Dismiss, this Motion should be granted, and Plaintiff Davis's pleading should be dismissed.

Dated: September 13, 2019                    Respectfully submitted,

                                             **WENDY'S INTERNATIONAL, LLC**

                                             By: /s/  Mark D. Kemple
                                             Mark D. Kemple (admitted pro hac vce)
                                             kemplem@gtlaw.com
                                             Greenberg Traurig, LLP
                                             1840 Century Park East, Los Angeles, CA 90067
                                             Tel: (310) 586-7864
                                             *Attorneys for Wendy's International, LLC*

15