**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE DAVIS individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:19-CV-04003 |
| v. | ) ) | Hon. Marvin E. Aspen Hon. Mag. Gabriel A. Fuentes |
| WENDY'S INTERNATIONAL, LLC | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Nicole Davis, individually and on behalf of a proposed class, alleges that Defendant Wendy's International, LLC ("Wendy's") violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq.*, by offering late-night hours at its restaurants during which customers may patronize Wendy's only via drive-through windows. Davis argues that she cannot independently access Wendy's products during these hours because she is visually-impaired and unable to operate motor vehicles, and thus unable to use the drive-through. (Compl. (Dkt. No. 1) at 1.) Presently before us is Wendy's motion to dismiss Davis's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6). (Mot. to Dismiss (Dkt. No. 11) at 1.) As set forth below, we grant Wendy's motion to dismiss for failure to state a claim under Rule 12(b)(6) with prejudice and deny Wendy's motion to dismiss for lack of personal jurisdiction and lack of standing under Rules 12(b)(1) and (2).

## BACKGROUND

Nicole Davis is a citizen and resident of Chicago, Illinois. (Compl. ¶ 9.) Davis is a member of a protected class of visually impaired persons under the ADA. (Compl. ¶ 9.) Due to her vision impairment, she cannot operate a motor vehicle. (Compl. ¶ 9.) She brings this action on behalf of herself and a proposed nationwide class of visually impaired persons. (Compl. ¶ 57.)

Wendy's is a corporation organized under the laws of the State of Ohio that owns, operates and/or leases the more than 6,000 Wendy's restaurants in the United States. (Compl. ¶¶ 11, 13.) Restaurants are owned and operated either entirely by Wendy's or in part with franchisees. (Compl. ¶ 14.)

Consumers can patronize Wendy's restaurants through an interior counter or exterior drive-through. (Compl. ¶ 23.) Patrons in automobiles can access service via a driveway system around the exterior of the restaurant. (Compl. ¶ 26.) The drive-through is often open later than the interior restaurant. (Compl. ¶ 27.)

Wendy's does not serve pedestrians through the drive-through. (Compl. ¶¶ 30, 31.) People who are visually impaired cannot drive, so they cannot independently access the drive-through. (Compl. ¶ 34.)

Davis alleges she "periodically desires to obtain food from Wendy's restaurants" during late hours. (Compl. ¶ 36.) In February 2019, Davis walked to the Wendy's restaurant located at 7 East 111th Street, Chicago, Illinois, approximately a sixteen-minute walk from her home. (Compl. ¶ 37.) When she arrived, the restaurant lobby doors were locked. (Compl. ¶ 38.) The restaurant continued to serve customers via the drive-through service, but Davis could not independently access the drive-through due to her inability to drive. (Compl. ¶¶ 39, 40.)

Davis further alleges she visits the Wendy's at 7 East 111th Street "once every two months and she reasonably expects to visit there again in the future." (Compl. ¶ 41.) This Wendy's is near her home and other commercial establishments that Davis visits. (Compl. ¶ 42.) This Wendy's is also close to the public bus that Davis uses regularly. (Compl. ¶ 43.) Davis alleges she sometimes avoids the Wendy's during late-night hours because she is aware that she will not be able to independently patronize the restaurant. (Compl. ¶ 46.)

## STANDARD OF REVIEW

Once the defendant moves to dismiss the complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Id.* at 779; *see* Fed. R. Civ. P. 4(k)(1)(A).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citing *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). In evaluating a motion to dismiss, we "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

3

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

## ANALYSIS

### I. Personal Jurisdiction

Wendy's argues that this Court cannot exercise personal jurisdiction over nonresident class members who allegedly experienced ADA violations outside of Illinois. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. No. 12) at 7–8.) Wendy's asks us to strike Davis's Rule 23 class allegations or limit them to persons injured within Illinois. (Mem. at 8.).

The Due Process Clause of the Fourteenth Amendment sets the bounds of personal jurisdiction in a diversity suit. U.S. Const., amend. XIV, § 1; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 105 S. Ct. 2174, 2177 (1985); *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Illinois' long-arm statute extends personal jurisdiction to out-of-state defendants on any basis "permitted by the Illinois Constitution and the Constitution of the United States." 725 ILCS 5/2–209(c). Therefore, if personal jurisdiction is constitutional, an Illinois court may exercise jurisdiction statutorily. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014).

"[T]he Due Process Clause of the Fourteenth Amendment precludes the exercise of personal jurisdiction over a defendant in a putative class action where nonresident, absent members seek to aggregate their claims with an in-forum resident, even though the defendant allegedly injured the nonresidents outside of the forum." *Mussat v. Iqvia Inc.*, No. 17 C 8841, 2018 WL 5311903, at *3 (N.D. Ill Oct. 26, 2018); *see also Garvey v. Am. Bankers Ins. Company of Fla.*, No. 17 CV 986, 2019 WL 2076288, at *2 (N.D. Ill. May 10, 2019) (striking the class definition "to the extent it asserts claims of [nonresidents]"). This reasoning is based on *Bristol-Myers Squibb Co.*

*v. Superior Court of California, San Francisco Cty.*, --U.S.--, 137 S. Ct. 1773, 1783 (2017), in which the Supreme Court held that a state court cannot exercise specific personal jurisdiction over nonresident consumers alleging injuries that occurred outside of the forum in mass tort claims. The Court left open the question as to whether "its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789 n.4.

Like other courts in this District, we find that *Bristol-Myers* applies to nationwide class actions in which not all members of a class were injured in the forum state. *Mussat*, 2018 WL 5311903 at *5; *see also Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, Case No. 16 C 9281, 2018 WL 3474444, at *2 (N.D. Ill. July 19, 2018) ("[D]ue process requirements do not differ between class and non-class actions."); *Chavez v. Church & Dwight Co., Inc.*, No. 17 C 1948, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018) ("*Bristol-Myers* extends to class actions, and [plaintiff] is therefore foreclosed from representing either a nationwide and [sic] multistate class comprising non-Illinois residents in this suit.").

Here, Davis's nationwide class definition includes "all individuals who are unable to drive by reason of visual disability and who have been and/or are being denied access to Wendy's restaurants in the United States where Wendy's restaurants products and services are only offered via drive-[through]." (Compl. ¶ 57.) Due Process forecloses our exercise of personal jurisdiction over the nonresident consumers alleging injuries that occurred outside of Illinois. *Mussat*, 2018 WL 5311903 at *4. Therefore, we strike the class definition to the extent that it asserts claims of nonresidents whose alleged injuries occurred outside of Illinois.

5

**II.     Standing**

Wendy's argues that Davis lacks standing for her injunctive and declaratory relief claims. Constitutional standing limits federal courts' jurisdiction to "cases" and "controversies," U.S. Const. art. III, § 2, and requires the plaintiff to allege an "'injury in fact' that is 'fairly traceable' to the defendant's conduct." *Bank of Am. Corp. v. City of Miami, Fla.*, -- U.S. --, 137 S. Ct. 1296, 1302 (2017) (quoting *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S. Ct. 1540, 1547 (2016)).

Wendy's argues that the first element, injury in fact, is at issue here. To establish injury in fact for Title III ADA claims, "a plaintiff must allege 'past injury under the ADA'; show that 'it is reasonable to infer from her complaint that this discriminatory treatment will continue'; and show that 'it is also reasonable to infer, based on the past frequency of her visits and the proximity of [the public accommodation] to her home, that she intends to return to [the public accommodation] in the future.'" *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *Camarillo v. Carrols Corp.,* 518 F.3d 153, 158 (2d Cir. 2008)).

Davis has alleged past injury under the ADA. A plaintiff can allege past injury where they provide sufficient facts to indicate that they attempted to access the restaurant during late-night hours. *See Faircloth v. McDonald's Corp.*, No. 18 C 1831, 2018 WL 5921230, at *3 (N.D. Ill Nov. 13, 2018). Davis claims that she attempted to access the restaurant but could not because the doors were locked. (Compl. ¶ 38). Therefore, she has alleged past injury.

Next, Davis must show that the discriminatory treatment will continue and that she is likely to suffer future injury. *Scherr*, 703 F.3d at 1074. There are "four factors relevant to this inquiry: (1) the history of plaintiff's patronage of a particular location; (2) the proximity of the place in question to the plaintiff's residence or location of frequent travel; (3) the definiteness of the plaintiff's plans to return; and (4) the plaintiff's frequency of travel near the defendant

establishment." *Faircloth v. McDonald's Corp.*, No. 18 C 1831, 2018 WL 5921230, at *3 (N.D. Ill Nov. 13, 2018) (quoting *Access 4 All v. Chi. Grande, Inc.*, 2007 WL 1438167, at *6 (N.D. Ill May 10, 2017)) (internal quotation marks omitted).

The *Faircloth* court considered a similar ADA discrimination claim in which a visually-impaired plaintiff could not independently access McDonald's when only the drive-through was open. *Faircloth*, 2018 WL 5921230 at *1. The *Faircloth* plaintiff did not meet the first three factors in the future injury inquiry. *Id.* at *4. First, he could not allege a history of patronage because he "[did] not specify how many times" he visited the specific McDonald's. *Id.* at *3. Second, he did not establish the proximity of the McDonald's because he did not specify if he lives within plausible walking distance. *Id.* Third, he did not allege definite plans to return because he did not specify that "he intends specifically to visit on foot during late-night hours." *Id.* The court did not address the fourth factor, plaintiff's frequency of travel near the McDonald's. *Id.*

Unlike the plaintiff in *Faircloth*, Davis has established future injury under the four-factor analysis. *Id.* at *4. First, Davis has alleged sufficient facts to indicate a history of patronage to the Wendy's near her home because she specified how many times she visited Wendy's, claiming to visit "once every two months." (Compl. ¶ 41.) *See Id. at *3.* Second, Davis has alleged that the Wendy's is within walking distance from her home, allowing for an inference that it is in close proximity to her residence. (Compl. ¶ 43.) Third, Davis has alleged sufficient facts to allow for an inference of definite plans to return. She intends specifically to visit on foot and "periodically desires to obtain food from Wendy's during [the] late evening hours." (Compl. ¶¶ 36, 43.)

7

Davis also alleges that she "sometimes avoids going to Wendy's during late-night hours." (Compl. ¶ 46.) While the *Faircloth* court found that plaintiff's claim of sometimes avoiding the restaurant to constitute insufficient "some day intent" *id.*, the 7th Circuit held a plaintiff's claims "that they would visit a place but for ongoing violations . . . cannot be equated with the speculative some day intentions that were insufficient to show injury in fact in [another case]." *Scherr*, 703 F.3d at 1074. The cases are distinguishable. While the *Faircloth* plaintiff did not meet at least two other factors in the court's future injury inquiry, *Faircloth*, 2018 WL 5921230 at *3, the *Scherr* plaintiff alleged sufficient facts to show a history of patronage and proximity to a location of frequent travel. *Scherr*, 703 F.3d at 1074. Like the *Scherr* plaintiff, Davis has alleged sufficient facts to meet the first two factors of the future injury inquiry, as explained above. Therefore, her claim that she "sometimes avoids going to Wendy's" does not constitute speculative some day intent but rather an intent to return if not for the alleged violation. *Id.*

Fourth, Davis has established a frequency of travel near the Wendy's because she alleges that she frequently visits other commercial establishments near Wendy's. (Compl. ¶ 42.) Davis has met all the factors of the future injury inquiry.[1]

Davis does not have to allege that she will visit and suffer an injury at each Wendy's named in the complaint to establish standing as to those restaurants. Instead, Davis must allege sufficient facts to support an inference that there is an ongoing violation at the other restaurants. *Scherr*, 703 F.3d at 1075. Davis alleges that Wendy's late-night policy is to refuse to serve pedestrians at the drive-through. (Compl. ¶ 31.) Therefore, Davis has standing to challenge Wendy's late-night drive-through policy beyond the single restaurant she frequents.

---

[1] The *Faircloth* court does not address this factor, presumably because the plaintiff in that case failed on the other factors in the analysis. *Faircloth*, 2018 WL 5921230 at *4.

Davis does not lack standing for her injunctive and declaratory relief claims because she has shown past and future injury such that she has established injury in fact. Therefore we deny Defendant's motion to dismiss for lack of subject matter jurisdiction.

### III.     Title III of the ADA

Wendy's argues that Davis fails to allege the requisite factual elements of a claim under Title III of the ADA because she does not allege discrimination "on the basis of disability" and she does not allege that Wendy's owned, leased, or operated the restaurant location at issue. 42 U.S.C. § 12182(a).

Section 12182(a) of the ADA protects against discrimination against individuals "on the basis of disability." 42 U.S.C. § 12182(a).  This language "requires [a plaintiff] to prove that 'but for' his disability, he would have been able to access the services or benefits desired." *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018).

Here, Davis "periodically desires to obtain food from Wendy's restaurants during . . . late evening hours."  (Compl. ¶ 36.)  To establish causation, Davis has to prove that but-for her physical disability, she would be able to obtain food from that Wendy's during late evening hours. *See Holzmueller*, 881 F.3d at 594.  During late-night hours, customers can only access Wendy's service via the drive-through.  (Compl. ¶ 29.)  However, the drive-through is only accessible to customers in automobiles, and Wendy's prohibits pedestrians from walking through it.  (Compl. ¶ 30).  Davis argues that but-for her visual impairment, she would have been able to drive and therefore access the drive-through independently.  (Pl.'s Resp. (Dkt. No. 17)  at 11.)  Davis has failed to "prove [that] 'but for' [her] disability, [she] would have been able to access the services or benefits desired." *Holzmueller*, 881 F.3d at 593.  First, Wendy's policy affects

9

non-disabled and disabled pedestrians identically. Second, Davis has failed to plead facts that would lead to an inference that she would drive but for her visual impairment.

First, Wendy's policy to prohibit pedestrians from walking through the drive-through affects all pedestrians, not just blind pedestrians. "The causation analysis depends on whether [the plaintiff would access the services or benefits desired] if he were *not disabled*. The fact that [plaintiff] does not have a chance to [access the services or benefits desired] does not establish that the [defendant's policies] are the but-for cause of his failure to [access the services or benefits desired]." *Holzmueller*, 881 F.3d at 594 (emphasis in original); *see also Wis. Cmty. Servs., Inc.*, 465 F.3d 737, 754–55 (7th Cir. 2006) (finding causation "only when the plaintiff shows that, 'but for' his disability, he would have been able to access the services or benefits desired" (internal citation omitted)); *H.P. by and through W.P v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (holding no causation in a claim based on denial of high school enrollment to disabled non-resident student where school would have denied enrollment to non-disabled non-resident students).

Here, Wendy's refuses service to any pedestrian who walks up to the drive-through to order food. (Compl. ¶ 40.) It is not Davis's disability that precludes her from obtaining food from Wendy's, but her status as a pedestrian.[2] If a non-disabled pedestrian were to use the drive-through, they would also be refused service. On the other hand, as with any other non-drivers, Davis could access the drive-through if she were a passenger in a car sharing service, a taxi, or a

---

[2] Plaintiff's case's theory is essentially that any business dealing exclusively with automobile drivers inherently discriminates against people who are blind or have visual impairments. Plaintiff cites no law on that point and we are unaware of any such case. Nor can we imagine such a proposition of law would match with the ADA's plain language and Congress's intent in passing the ADA. Plaintiff's theory would have us believe that drive-through car washes, for example, also discriminate against people who are blind or have visual impairments. Plaintiff's theory would create absurd unintended economic consequences.

friend's car. Therefore, the fact that Davis cannot drive because of her visual impairment does not establish that Wendy's drive-through policies are the but-for cause of her inability to obtain food. *A.H.*, 881 F.3d at 594. Instead, it is her status as a pedestrian that is the but-for cause of her injury.

Second, there are no facts in the complaint to suggest that Davis could drive if not for her disability. While Davis argues that we can assume she would be able to drive a car but for her disability, she has not alleged any facts that would lead to a reasonable inference that that is the case. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In Illinois, drivers may be required to pass a vision screening in addition to a written exam and a driving exam at the discretion of the Secretary of State. 6 Ill. Comp. Stat. 5/6-105 (1998). Assuming Davis would pass a potential vision screening but for her disability does not then allow us to plausibly infer that she would pass both the written and driving exam.

There are other reasons we cannot assume that she could drive and access the drive-through even if she were not visually impaired. She may be unable to afford a car, car insurance, or registration. She may have her driver's license suspended or revoked. She may be under the influence of drugs or alcohol, or she may travel to the restaurant on foot or on the bus. Given the number of possibilities, based on the facts alleged in the complaint, we cannot make a reasonable inference that Davis would be able to drive but for her disability, such that she could obtain food from the Wendy's drive-through. *See A.H.*, 881 F.3d at 594.

Davis has not alleged sufficient facts to satisfy the Section 12182(a) element that discrimination is "on the basis of disability." 42 U.S.C. § 12182(a). Because Davis has failed to allege sufficient facts to satisfy the Section 12182(a) causation element that discrimination is "on

11

the basis of disability," she has failed to state a claim for violation of the ADA. Therefore, we grant Wendy's motion to dismiss for failure to state a claim with prejudice.

## CONCLUSION

For the reasons discussed above, we allow Defendant's 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: December 12, 2019
       Chicago, Illinois

12